# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CORTEZ RAMONE WYNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 05 C 102 |
| | ) |
| PAUL J. KAUPAS, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Paul J. Kaupas' ("Kaupas"), Michael
O'Leary's ("O'Leary"), and Ronald Poturalski's ("Poturalski") (collectively referred
to as "Defendants") motion for summary judgment. For the reasons stated below, we
grant Defendants' motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff Cortez Ramone Wynn ("Wynn") was incarcerated at the Will County
Adult Detention Facility ("Will County Jail") from July 8, 2003, until August 2004.
On or about August 14, 2003, Wynn requested to be held in protective custody.
After processing, Wynn was reclassified as a protective custody inmate and

1

transferred to Pod D ("D-Pod"). The Will County Jail is constructed in a "podular" style. A housing pod retains inmate cells on two tiers around a common day room, exercise area, and visitation room. The Will County Jail contains six housing pods. Pods A, B, C, and E are general population housing pods for males and Pod F houses female inmates, while D-Pod is a special housing pod for male inmates who are classified as disciplinary, administrative segregation, protective custody, or maximum security inmates. Unlike a general housing pod, which has one common dayroom, D-Pod has four separate dayrooms and a control room monitoring each dayroom. In order to manage the inmates, the Will County Sheriff's Office uses a "direct supervision" method, under which unarmed guards have unobstructed, direct contact with inmates. Guards are instructed to avoid using force with the inmates. If an emergency or physical altercation occurs, the guards are required to immediately notify the Emergency Response Team ("ERT"), which typically responds to emergencies in less than two minutes.

Due to overcrowding at the Will County Jail on January 2, 2004, protective custody inmates and administrative segregation inmates were housed in the same D-Pod dayroom, but on separate tiers and on separate lockdown schedules. Having a separate lockdown schedule meant that when protective custody inmates were allowed out of their cells and into the dayroom, otherwise known as "timeout," the administrative segregation inmates were locked in their cells, otherwise known as "lockdown," and vice versa. The purpose of the separate lockdown and timeout

schedules was to keep protective custody inmates separated from administrative segregation inmates.

On January 2, 2004, Wynn and Quintin Bailey ("Bailey"), an administrative segregation inmate, were allegedly housed in dayroom three of D-Pod. However, due to their different classifications, Wynn and Bailey allegedly had separate timeout schedules. At approximately 11:00 a.m., a pod-worker was allegedly serving lunch to the inmates in dayroom three and Deputies Poturalski and Defendant "Mr. Pena" ("Pena") were allegedly in the control room supervising D-Pod. The protective custody inmates, including Wynn, were allegedly on a timeout in the dayroom while the administrative segregation inmates, including Bailey, were on lockdown, locked in their cells. The pod-worker serving lunch allegedly advised Poturalski that the chuckhole, a small opening that allows food to be passed to the inmate without unlocking the cell door, on Bailey's cell door was closed. Rather than opening the chuckhole to interview Bailey about a previous incident, Poturalski allegedly decided to open Bailey's cell door from the control room and Poturalski asked Pena to unlock Bailey's cell door. As Poturalski allegedly walked into dayroom three, the door leading into dayroom three which was approximately fifteen feet from Bailey's cell and ten feet from where Wynn was sitting closed behind him and automatically locked. When Poturalski was about halfway to Bailey's cell, Poturalski allegedly saw Bailey exit the cell and run toward Wynn, who was sitting at a table eating his lunch. When Bailey reached Wynn, Bailey allegedly punched Wynn in the face, head and body. Subsequently, Poturalski allegedly called on his radio for members

of the ERT to assist in stopping the fight.  Poturalski allegedly threw ice water on Wynn and Bailey as Wynn and Bailey fought on the floor.  Wynn contends that Poturalski stood by without physically intervening.  When the ERT arrived, the ERT allegedly sprayed both Wynn and Bailey with pepper spray and separated them and handcuffed them.  Wynn alleges that the ERT members used excessive force on him as he was sprayed with pepper spray while on the floor.  Wynn also contends that he suffered two black eyes, a bloody nose, bruises and swelling to his face and head, a broken lower tooth, and contusions to his ribs.  Wynn claims that the Defendants knew or should have known of the potential risk of danger of violence, injury and harm that Bailey posed to protective custody status detainees such as Wynn.  Wynn also contends that after Bailey's attack, all Defendants continued to expose Wynn to risk of violence by failing to make changes regarding housing and transportation to the Will County Courthouse.  Wynn also contends that he was injured due to the failure of prison officials to alleviate the overcrowding in the Will County Jail.

Wynn brought the instant action and includes in his complaint claims brought against Defendants Kaupas, individually and officially, O'Leary, individually and officially, Poturalski, and Pena alleging failure to protect claims and Fourth Amendment claims in violation of 42 U.S.C. § 1983 ("Section 1983").  Defendants now move for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or pointing out "an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the movant has met this burden, the nonmoving party cannot simply rest on the allegations in the pleadings, but through "affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Local Rule 56.1

Defendants argue that Wynn's response to Defendants' motion for summary judgment should be stricken due to Wynn's failure to comply with Local Rule 56.1 and that Defendants' motion for summary judgment motion should be granted. Pursuant to Local Rule 56.1, when a party files a motion for summary judgment, each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of material facts.  Local Rule 56.1. Additionally, each party must either admit or deny each fact.  *Id.*  A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence.  *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(stating in addition that "[t]he purpose of the 56.1 statement is to identify for the court the evidence supporting a party's factual assertions in an organized manner:  it is not intended as a forum for factual or legal argument"). Pursuant to Rule 56.1, any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted.  Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1; *see also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).  A court is not "obliged in our adversary

system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994)(stating in addition that a local rule pertaining to summary judgment "is more than a technicality"). Further, the Seventh Circuit has held that "a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating that "[s]ubstantial compliance is not strict compliance"); *see Flores v. Chicago Transit Authority*, 2006 WL 2868901, at *1 (N.D. Ill. 2006)(stating that *pro se* litigants must comply with procedural rules, including local rules)(quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

The Defendants filed the instant motion for summary judgment and included the appropriate statement of material facts as required by Local Rule 56.1. Wynn, however, has failed to properly submit a Local Rule 56.1 statement controverting each disputed statement in the Defendants' statement of material facts. Instead, Wynn provided the court with a number of statements that do not properly cite to any specific portions of the evidence and responded to the Defendants' statement of material facts by neither admitting nor denying such facts. Further, Wynn failed to controvert the Defendants' positions with sworn statements, or any other admissible documentary evidence. Accordingly, pursuant to Local Rule 56.1, all material facts set forth in the Defendants' Local Rule 56.1 statement of material facts are deemed admitted.

In addition to the procedural deficiencies contained in Wynn's response, Wynn offered no arguments in opposition to the Defendants' motion for summary judgment as he failed to file a memorandum of law with his deficient statement of facts. As a result, Wynn has failed to sustain his burden under Rule 56(b) to set forth specific facts showing that there is a genuine issue of any material fact. *See Celotex*, 477 U.S. at 324 (stating that the summary judgment nonmovant must go beyond the pleadings and support contentions with proper documentary evidence such as affidavits, depositions, answers to interrogatories, or admissions on file). Although Wynn has failed to sustain his burden under Rule 56, we will discuss each of Wynn's claims in turn, noting, once again, that pursuant to Local Rule 56.1, all material facts set forth in the Defendants' Local Rule 56.1 statement of material facts is deemed admitted.

## II. Fourth Amendment Claim

To the extent that Wynn seeks to proceed under the Fourth Amendment for unlawful conditions of confinement, he is foreclosed from doing so because as a convicted inmate at the time of the attack the Eighth Amendment governs his claims. *Hart v. Sheahan*, 396 F.3d 887, 891 (7th Cir. 2005); *see Wilkins v. May*, 872 F.2d 190, 193 (7th Cir. 1989)(stating that "the question whether the fact, manner, or duration of his continued confinement is unconstitutional . . . becomes an Eighth Amendment issue" after a conviction).

III.  Failure to Protect Section 1983 Claims

    Defendants move for summary judgment on Wynn's claims that Defendants
were deliberately indifferent to Wynn's safety.  Under the Eighth Amendment,
"prison officials have a duty to protect prisoners from violence at the hands of other
prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  However, not every harm
caused by another inmate translates into constitutional liability for the corrections
officers responsible for the prisoner's safety.  *Id.* at 834.  In order for a plaintiff to
succeed on a claim for failure to protect, he must show that:  1) he was "incarcerated
under conditions posing a substantial risk of serious harm," and 2) the defendant-
officials acted with "deliberate indifference" to the risk.  *Id.* at 834; *see Borello v.
Allison*, 446 F.3d 742, 747 (7th Cir. 2006)(stating standard).  Thus, the Defendants
had to know that there was a substantial risk that Bailey would attack Wynn, yet
failed to take any action.  *Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir.
2001).

    Additionally, when an inmate is attacked by another inmate, the Eighth
Amendment is violated only if "deliberate indifference by prison officials effectively
condones the attack by allowing it to happen. . . ."  *Haley v. Gross*, 86 F.3d 630, 640
(7th Cir. 1996); *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)(stating that
deliberate indifference is comparable to criminal recklessness, and is shown by
"something approaching a total unconcern for [the plaintiff's] welfare in the face of
serious risks, or a conscious, culpable refusal to prevent harm").  A defendant "must
be both aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must draw the inference." *Farmer*, 511 U.S. at 837. A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985). Such total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). As the Seventh Circuit has stated, "mere negligence or even gross negligence does not constitute deliberate indifference," *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), and it is not enough to show that a prison official merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Deliberate indifference can be inferred only where defendants know there is a strong likelihood, rather than a mere possibility, that violence will occur. *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985). Since "[p]risons are dangerous places, prison officials cannot be expected to eliminate the possibility of all dangers. *McGill*, 944 F.2d at 345. Thus, the right to reasonable protection does not include the right to protection from random acts. *See Id.*, 944 F.2d at 348 (noting that "some level of [danger] . . . is inevitable no matter what guards do").

A.  Claims Against Poturalski

Poturalski argues that he is entitled to summary judgment as to Wynn's Section 1983 failure to protect claim because there is no evidence that Poturalski acted with deliberate indifference to the risk that Bailey would attack Wynn. The

Seventh Circuit has stated that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005)(quoting *Farmer*, 511 U.S. at 838). Poturalski argues that he did not act with deliberate indifference since there is no evidence to show that Poturalski knew that Bailey would exit the cell to attack Wynn. We agree.

The undisputed evidence shows that neither Wynn nor Poturalski could have expected that Bailey would exit his unlocked cell and attack Wynn. At his deposition, Wynn testified that no one knew that Bailey would attack Wynn, stating that "I wouldn't think that [the prison officials] knew [Bailey] was going to attack me that day." (D. Ex. D at 209). Wynn also stated in letters written to the Will County Jail after the attack that the Will County Jail did not have a "head start" on Bailey's attack and that Bailey "accidentally" exited his cell. (D. SOMF Par. 71-74). In addition, Poturalski, "never had a problem with Bailey, so [Poturalski] didn't expect that [Bailey] would attempt to exit the cell if it was unlocked," (D. Ex. C at Par. 21), and thus Poturalski "had no idea that Bailey intended to attack" Wynn. (D. Ex. C at Par. 22). Further, prior to the altercation, Wynn had neither been attacked by Bailey nor heard of previous attacks by Bailey against protective custody inmates. Thus, the undisputed evidence shows that Bailey posed no known apparent threat to Wynn and that Poturalski did not have reason to believe that Bailey would attack Wynn.

Poturalski also contends that he did not act with deliberate indifference since Poturalski took reasonable measures to stop Bailey's attack on Wynn. The Seventh Circuit has stated that "an officer who actually knew of a substantial risk to a detainee's safety is free from liability 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [he was] deliberately indifferent.'" *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005)(quoting *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)).

The undisputed evidence shows that Poturalski "yelled at Bailey to stop" running toward Wynn when Poturalski observed Bailey unexpectedly exit the unlocked cell. (D. Ex. C at Par. 25). The evidence also shows that once the fight between Wynn and Bailey started, Poturalski "immediately ordered the other inmates [in the pod] to lockdown and called on his radio for members of the ERT" to help stop the fighting. (D. Ex. C at Par. 27). The evidence further shows that Poturalski, in an attempt to stop the altercation, threw ice water on Wynn and Bailey as they "scuffled" on the floor. (D. Ex. C at Par. 28). The evidence also shows that although Poturalski did not physically attempt to stop the altercation, Poturalski instructed Wynn and Bailey to cease fighting and immediately after Poturalski threw ice water on Wynn and Bailey that the ERT arrived and stopped the fight. Finally, the undisputed evidence shows that the fight between Wynn and Bailey lasted less than two minutes and that Wynn did not suffer permanent injuries from the fight with Bailey. Based on the undisputed facts, it is clear that given the unexpected nature of the attack on Wynn, the necessity to lockdown other inmates, Poturalski's immediate

call for assistance to the ERT, and the duration of the fight, that Poturalski's actions were reasonably calculated to stop Bailey's attack on Wynn.

As the nonmoving party resisting summary judgment, Wynn "had the burden to go beyond the pleadings and 'affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial.'" *Borello*, 446 F.3d at 748 (quoting *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 561 (7th Cir. 2005)).  Wynn has failed to show that Poturalski had knowledge that Bailey would attack Wynn if given the opportunity.  In addition, Wynn has failed to explain why Poturalski's actions to secure D-Pod and put a halt to the fight were not reasonable.  Finally, Wynn has failed to show why Poturalski's refrain from using physical force to stop the fight was not reasonable under the circumstances.  Therefore, no reasonable jury could find that Poturalski acted with "deliberate indifference" to the attack on Wynn and we grant the motion for summary judgment on the claims brought against Poturalski.  *See Fisher*, 414 F.3d at 662 (stating that "a prison official may be liable 'only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it'")(quoting *Farmer*, 511 U.S. at 847.

### B.  Claims Alleging Individual Liability Against Kaupas and O'Leary

Kaupas and O'Leary move for summary judgment on Wynn's Section 1983 failure to protect claims against Kaupas and O'Leary individually because there is no evidence that suggests personal involvement by either Kaupas or O'Leary.  The

Seventh Circuit has made it clear that "the doctrine of *respondeat superior* does not apply to § 1983 actions. . . ." *Sanville*, 266 F.3d at 740. Thus, an individual cannot be held liable under Section 1983 in his individual capacity unless he "participated directly in the constitutional violation." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003)(stating that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation"). For a supervisor to be held liable under Section 1983 for acting in his supervisory role, a plaintiff must show that the supervisor directed the constitutional deprivation or that it occurred with his "knowledge and consent." *Id.* (indicating that a plaintiff must show that the supervisor knew "about the conduct and facilitated it, approved it, condoned it, or turned a blind eye").

In the instant action, the undisputed evidence shows that Kaupas is Sheriff of Will County and O'Leary is Warden of the Will County Jail. However, the undisputed evidence shows that neither Kaupas nor O'Leary were present at the scene when Bailey unexpectedly attacked Wynn. Additionally, Wynn has failed to present evidence that shows that either Kaupas or O'Leary authorized either Poturalski or Pena to unlock Bailey's cell door before Poturalski was present at the cell. Finally, Wynn has failed to present evidence that either Kaupas or O'Leary knew of Poturalski's and Pena's actions but failed to act. Thus, the undisputed evidence shows that neither Kaupas nor O'Leary "caused or participated in a constitutional deprivation." *Hildebrandt*, 347 F.3d at 1039.

In addition, Kaupas and O'Leary contend that they did not have knowledge that Bailey was predisposed to attack Wynn if Bailey was given the opportunity. As noted earlier, Wynn testified that no one knew that Bailey would attack Wynn, stating that "I wouldn't think that [the prison officials] knew [Bailey] was going to attack me that day." (D. Ex. D at 209). Also, Wynn had never previously been attacked by Bailey, nor had Wynn heard of Bailey attacking other protective custody inmates in the past. Further, although Wynn's complaint alleges that Wynn raised concerns to Kaupas and O'Leary prior to Bailey's attack on Wynn, the undisputed evidence shows that Wynn's complaints referenced his disapproval of being housed with administrative segregation inmates and did not reference Bailey. Thus, the undisputed evidence shows that Kaupas and O'Leary did not have advance notice that Bailey intended to attack Wynn.

As noted earlier, Wynn, as the nonmoving party resisting summary judgment. "had the burden to go beyond the pleadings and 'affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial.'" *Borello*, 446 F.3d at 748 (quoting *East-Miller*, 421 F.3d at 561). Wynn has failed to show that either Kaupas or O'Leary were present when Bailey attacked Wynn. In addition, Wynn has failed to show that either Kaupas or O'Leary had knowledge of the potential danger that Bailey posed to Wynn. Thus, no reasonable jury could find that either Kaupas or O'Leary acted with deliberate indifference to the attack on Wynn since Kaupas and O'Leary were not present when Wynn was attacked and Kaupas and O'Leary did not have advance notice that Bailey

intended to attack Wynn. Therefore, we grant Kaupas' and O'Leary's motion for summary judgment as to Wynn's Section 1983 failure to protect claims against Kaupas and O'Leary individually. *See Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)(finding that supervisors were not responsible for unlawful search since the supervisors had no personal involvement because they were not present when the search took place); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002)(finding that communicating general risks of harm to the sheriff were insufficient to establish deliberate indifference to a specific risk of harm).

## IV. Official Capacity Claims

Kaupas and O'Leary move for summary judgment on Wynn's claims against Kaupas and O'Leary in their official capacities. Actions against individual defendants in their official capacities are treated as suits against the government entity itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The doctrine of *respondeat superior* cannot be utilized to hold local governmental units liable for violations pursuant to 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A governmental unit cannot be held liable under Section 1983 "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs.*, 183 F.3d 734, 737 (7th Cir. 1999); *see Estate of Novack v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). A local governmental unit's unconstitutional policy or custom can be shown by: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that,

although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004).

In the instant action, Kaupas and O'Leary argue that Wynn has failed to point to evidence that indicates that Poturalski's or Pena's alleged misconduct was the result of any Will County Jail or Will County policy, practice, or custom. Wynn was allowed to conduct discovery in regards to his municipal liability claim. However, as noted earlier, Wynn has failed to provide any relevant evidence relating to the isolated incident. Relying on the complaint alone is insufficient to show that there was any policy, practice, or custom created or endorsed by the Will County Jail in its operations that resulted in Poturalski's or Pena's alleged misconduct. Finally, at his deposition, Wynn "testified that he is not claiming that there are policies and procedures at the [Will County Jail or Will County] that were followed that caused him to be attacked," (D. Ex. D at 91), but rather that "the basis of [his] claim is that policies and procedures were not followed, which allowed Bailey to attack [him]." (D. Ex. D at 175-81, 191). Therefore, Wynn has failed to point to any evidence that would enable a reasonable trier of fact to conclude that any Will County Jail or Will County policy, practice, or custom was responsible for the alleged misconduct of Poturalski or Pena that led to Bailey's attack on Wynn. Therefore, we grant Kaupas' and O'Leary's motion for summary judgment on the municipal liability claim.

V.  Qualified Immunity

Defendants argue that they are protected by qualified immunity because they did not violate Wynn's rights under the Eighth Amendment.  A government official is protected from civil monetary liability by qualified immunity when performing official discretionary functions if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Siebert v. Severino*, 256 F.3d 648, 654 (7th Cir. 2001)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  Qualified immunity does not apply to a situation in which "the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional."  *Id*.

In analyzing a qualified immunity claim, a district court must determine:  1) "whether the disputed conduct, as alleged, violates a constitutional right," and 2) "whether that right was 'clearly established' at the time of the alleged conduct."  *Wernsing v. Thompson*, 423 F.3d 732, 742 (7th Cir. 2005)(citing *Saucier*, 533 U.S. at 201); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001)(stating that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity" and that "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established").


A.  Qualified Immunity as to Poturalski

18

In the instant action, as is explained above, the undisputed evidence shows that Poturalski did not have knowledge that Bailey posed a substantial risk to Wynn's safety and Poturalski did not have knowledge that Bailey would attack Wynn if Bailey were given the opportunity. In addition, the undisputed evidence shows that Poturalski responded reasonably to Bailey's attack on Wynn in order to "quickly restore order to a chaotic situation." *Fisher*, 414 F.3d at 664 (stating that "an officer who actually knew of a substantial risk to a detainee's safety is free from liability 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [he was] deliberately indifferent'")(quoting *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)); *see also Fisher*, 414 F.3d at 664 (finding that a prison official was not deliberately indifferent when he responded to inmates' attack on the plaintiff inmate by placing all the inmates against a wall, even though the plaintiff was then stabbed by another inmate, because his response was reasonable under the circumstances). Further, the undisputed evidence shows that Poturalski's actions that led to Bailey's random exit from his cell, which led to Bailey's attack on Wynn, and the procedures employed by Poturalski to maintain order "w[ere] not 'so dangerous that the deliberate nature of [Poturalski's] actions [could] be inferred.'" *Fisher*, 414 F.3d at 664 (quoting *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002)). Thus, a reasonable prison official in Poturalski's position could not have concluded that he was violating any of Wynn's constitutional rights, and to the extent that Wynn could have prevailed on any of his

claims in the instant action, such claims would be barred by Poturalski's qualified immunity.

### B.  Qualified Immunity as to Kaupas and O'Leary

In the instant action, as is explained above, the undisputed evidence shows that on January 2, 2004, neither Kaupas nor O'Leary "participated directly in the constitutional violation," *Hildebrandt*, 347 F.3d at 1039, since Kaupas and O'Leary were not present when Bailey attacked Wynn.  Further, the evidence shows that neither Kaupas nor O'Leary knew "about the conduct and facilitated it, approved it, condoned it, or turned a blind eye." *Id*.  Thus, a reasonable prison official in the position of either Kaupas or O'Leary could not have concluded that he was violating any of Wynn's constitutional rights, and to the extent that Wynn could have prevailed on any of his claims in the instant action, such claims would be barred by Kaupas' and O'Leary's qualified immunity.

Further, a defendant is entitled to qualified immunity where he is inherently limited by the funds available to him to control the conditions of confinement where such conditions are the result of overcrowding.  *See Kish v. County of Milwaukee*, 441 F.2d 901 (7th Cir. 1971)(dismissing a Section 1983 lawsuit in which the main cause of the harm suffered by the plaintiffs was drastic overcrowding).  Wynn has also alleged that Kaupas and O'Leary were deliberately indifferent by failing to alleviate overcrowding at the Will County Jail.  Therefore, since Kaupas and O'Leary are inherently limited by funds to control the amount of people incarcerated

20

in the Will County Jail, Kaupas and O'Leary are also entitled to qualified immunity as to liability alleged by Wynn based on overcrowding of the Will County Jail.

## VI.  Claims Against Pena

On September 22, 2005, the return of service of summons returned unexecuted as to Pena.  On August 2, 2006, this court gave Wynn thirty days to effectuate service of the summons and complaint on Pena.  We warned Wynn that failure to serve Pena may result in dismissal of the instant action as to Pena for want of prosecution.  Wynn has failed to effectuate service of the summons and complaint on Pena and, therefore, we dismiss brought against Pena for want of prosecution.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety and dismiss the claims all claims against Pena.


_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   February 6, 2007